UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
:
JOHN CODY aka : CASE NO. 1:17-CV-00132
BOBBY THOMPSON, :
:
      Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 1]
KAREN SLUSHER, *et al.*, :
:
      Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Plaintiff John Cody, aka Bobby Thompson filed this civil rights action against Richland Correctional Institution Corrections Officer Karen Slusher, Americans With Disability Act ("ADA") Director Trinity Floyd, Deputy Warden of Special Services Timothy Milligan, Physician Alfred Granson, Institutional Inspector Kelly Rose, ADA Assistant Director Sheila Jordan, Unit Manager Robert Eslick, SRT Supervisor Lieutenant Spears, Pharmacy Nurse Megan, Corrections Officer France, Corrections Officer Connie Carpenter, Corrections Officer Allenbaugh, Corrections Officer Kimberly Mosier, Corrections Officer Collins, and Warden Margaret Bradshaw.  Plaintiff's 479-page Complaint is divided into twelve counts, describing multiple incidents and listing multiple causes of action for each incident, including denial of access to courts, retaliation, denial of due process, denial of equal protection, unlawful search and seizure of property, subjection to cruel and unusual punishment, violations of the ADA, and numerous state law claims.  He seeks monetary damages.

## I.  Legal Standard

Although the Court does not hold *pro se* pleadings to the same standard as those filed by attorneys[1], the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  A claim lacks an arguable basis in law or fact when it is based on an unquestionably meritless legal theory or when the factual allegations are clearly baseless.[3]  A cause of action fails to state a claim upon which relief may be granted when it does not contain enough facts to suggest Plaintiff has a plausible claim that entitles him to the relief he seeks.[4]  This does not mean a Plaintiff is required to allege the facts of his Complaint in great detail, but he still must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."*[5]*  A Complaint that offers only legal conclusions or a simple listing of the elements of a cause of action will not meet this standard.[6]  When reviewing the Complaint under § 1915(e), the Court must read it in a way that is the most favorable to the Plaintiff.[7]

---

[1]  There is some indication that Plaintiff may be a disbarred attorney.  He alleges he was educated at Harvard Law School and practiced criminal law outside of the State of Ohio.  The court at his criminal trial gave some credibility to this statement and allowed him to represent himself with the assistance of appointed counsel.

[2]  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

[3]  *Neitzke*, 490 U.S. at 327.

[4]  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

[5]  *Iqbal*, 556 U.S. at 678.

[6]  *Id.*

[7]  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## II. Analysis

Due to the extensive length of the Complaint, the Court will not recite the factual allegations in detail. Instead, the Court will summarize the pertinent facts necessary to address Plaintiff's federal law claims. In addition, although the facts supporting each claim are slightly different, there are general themes running through them which allow many of them to be considered together. When possible, the Court will address similar claims collectively.

### *Respondeat Superior*

As an initial matter, several of Plaintiff's claims are asserted under theories of liability which are not available under 42 U.S.C. § 1983, or against Defendants who are immune from damages under § 1983. First, Plaintiff's claims against Spears in Count 5, against Carpenter in Count 6, and against Bradshaw in Counts 1, 2, and 4 appear to be based solely on a theory of *respondeat superior* liability, meaning they are named as Defendants only because they supervise other Defendants. Plaintiff does not allege they personally engaged in any wrong-doing. Plaintiff cannot establish the individual liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.[8] Because he did not allege these Defendants personally participated in the conduct described in those Counts, they cannot be held liable for the alleged constitutional violations.[9]

---

[8] *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).

[9] *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)).

Furthermore, Plaintiff alleges Spears is liable because she failed to properly train officers under her supervision to prevent theft of property by other inmates following a search of a cell block. A supervisor's failure to supervise, control, or train the offending individual officers is not actionable unless the Plaintiff shows that the supervisor either encouraged the specific misconduct or in some other way directly participated in it.[10] Claims cannot be based on mere negligence. Plaintiff must show: (1) that the theft of property by other inmates was the result of conduct by officers that violated Plaintiff's constitutional rights; and (2) that Spears was aware of multiple incidents of similar constitutional violations by the officers under her supervision and completely failed to train them to act differently or provided training that was so reckless or grossly negligent that future misconduct was almost inevitable.[11] For reasons explained below, Plaintiff failed to allege facts suggesting the officers violated his constitution rights. He also fails to allege that there was a substantial pattern of this conduct by officers, that Spears was aware of the situation, and that she disregarded the need for additional training knowing that the pattern would continue.

Similarly, all of Plaintiff's claims against Institutional Inspector Kelly Rose are based on her review and denial of his grievances. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983.[12]

Finally, Plaintiff cannot hold any of the Defendants liable in their official capacities for claims asserted under 42 U.S.C. § 1983. A claim asserted against a Defendant in his or her official capacity is really a claim asserted against the government entity that employs him or

---

[10] *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999).

[11] *Id.*

[12] *Shehee*, 199 F.3d. at 300.

her, which in this case is the State of Ohio.[13] The State of Ohio is immune from suits for damages under the Eleventh Amendment.[14]

**<u>Access to the Courts</u>**

In Counts 1, 2, 3, 5, 6, and 7, Plaintiff contends he was denied access to the courts. He claims he is mobility impaired and walks with a cane. He states his time in the law library is limited, and there are only a small number of computers, and photocopiers. He claims other inmates get to those resources first, limiting his time with them.[15] He also alleges he has to wait in line to obtain copy cards for photocopies, which shortens his time in the library.[16] He states his legal materials were temporarily misplaced,[17] his copy cards were taken from him,[18] and he was denied permission to attend a civil trial in Florida.[19]

To state a claim for denial of access to the courts, Plaintiff must allege three things. First, Plaintiff must show he suffered an actual injury by alleging that particular actions of the Defendants prevented him from pursuing or caused the rejection of a specific direct appeal, habeas corpus petition, or civil rights action.[20] Second, Plaintiff must allege facts suggesting

---

[13] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

[14] *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).

[15] Count 1

[16] Counts 1 and 2.

[17] Count 3

[18] Counts 5 and 6

[19] Count 7

[20] *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

that the claims asserted in those actions were not frivolous.[21] Third, Plaintiff must allege facts suggesting that the Defendants' actions were more than merely negligent.[22]

Plaintiff does not meet the actual injury requirement. He indicates he was unable to properly prepare his Application to Reopen his direct appeal under Ohio Appellate Rule 26(b), his habeas petition, and one or more civil rights actions under 42 U.S.C. § 1983. He states a Motion to Reopen a Default Judgment was dismissed as untimely, and his Petition for a Writ of Certiorari filed in the Ohio Supreme Court was denied due to "prejudicial spillover."[23] He also claims he was unable to prepare a defense for a civil suit, *Ohio v. Bobby Thompson*, from Pinellas County, Florida.

Based on his court filings, it is apparent that Plaintiff was not prevented from pursuing any direct appeals, collateral attacks on his conviction, habeas petitions or civil rights actions. Plaintiff filed a timely direct appeal of his conviction, through counsel, and obtained a partial reversal and new sentence on June 11, 2015.[24] Although the Supreme Court of Ohio declined to accept jurisdiction over Plaintiff's timely filed appeal, that decision is not unusual and there is no indication that the Defendants' actions contributed to this determination.[25] Contrary to his assertion, Plaintiff did file a timely Application to Reopen his Appeal under Ohio Appellate Rule 26(b). At 513 pages, it far exceeded the ten-page limit permitted by the Appellate Rules; however, the Ohio Appellate Court allowed Plaintiff to submit a new Application that complied

---

[21] *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011).

[22] *Wojnicz v. Davis*, No. 03-1017, 2003 WL 21774162, at *2 (6th Cir. July 29, 2003).

[23] Doc. No. 1 at 30.

[24] *State of Ohio v. Cody*, 34 N.E.3d 189 (2015).

[25] *State of Ohio v. Cody,* 143 Ohio St. 3d 1500 (2015)(Table).

-6-

with the limitation.[26]  He received a decision on the merits of his claims on April 21, 2017.[27]  He also filed a Petition for a Writ of Certiorari in the Supreme Court of the United States, which was denied.[28]  He filed a timely Petition for Post Conviction Relief in the trial court that was addressed on the merits.[29]  His appeal of that decision, asserting nine assignments of error was also considered on the merits.[30]  None of those filings was dismissed because they were improperly prepared.  There is no record in this Court of Plaintiff attempting to file a Habeas Corpus Petition or any other civil rights action.  Plaintiff was not prevented from filing this nearly 500 page Complaint against 15 Defendants.  He provides no specific information on the claims he wanted to assert in any potential civil rights action or habeas action he intended to file.  Any other Motions or actions other than those submitted in a direct appeal, habeas petition or civil rights action are not protected by the First Amendment right of access to the courts.[31]

**Equal Protection**

Plaintiff's primary equal protection claims are based on his assertions that limitations in law library resources and restrictions on the amount of time he can spend in the library have a greater impact on him because he is mobility impaired and a high volume filer.[32]  The Equal Protection Clause prohibits discrimination by government actors which either burdens a

---

[26]  *Id.* at *1.

[27]  *Id.*

[28]  *Thompson v. Ohio*, 136 S.Ct. 2023 (May 16, 2016).

[29]  *State of Ohio v. Cody*, No. 102213, 2015 WL 4133281 (Ohio App. Ct. 8 Dist. July 9, 2015).

[30]  *State of Ohio v. Cody*, No. 102213, 2015 WL 4133281 (Ohio App. Ct. 8 Dist. July 9, 2015).

[31]  *Lewis*, 518 U.S. at 351.

[32]  Counts 1 and 2

fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.[33] The law library limitations and restrictions do no implicate a fundamental right and high volume filers are not a protected class. Plaintiff has not shown is being treated differently than any other inmate seeking to use the law library or its resources.

**<u>Americans With Disabilities Act</u>**

Plaintiff's claims under the Americans with Disabilities Act ("ADA") are similar to his equal protection claims.[34] He alleges that his mobility impairment makes it more difficult for him to open the law library door, to be first in line to use the computers and copiers, or to be the first back to his cell after a search. Title II protects certain disabled individuals against discrimination by a "public entity."[35] A "public entity" is defined by statute as "any State or local government."[36] Plaintiff asserts his ADA claims against Jordan and Floyd. There is no personal liability under Title II of the ADA.[37]

To the extent he is asserting claims against Jordan and Floyd in their official capacities, he fails to state a claim upon which relief may be granted. Claims asserted against them in their official capacities are asserted against the government entity that employs them, which is the

---

[33] *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

[34] Counts 2 and 8

[35] 42 U.S.C. § 12132.

[36] 42 U.S.C. § 12131(1)(A).

[37] *Crumbaker v. McLean County Kentucky*, No. 02-5110, 2002 WL 1359364 at *2 (6th Cir. June 20, 2002)(citing *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000)); *Moore v. Chavez*, Nos. 01-1553, 01-2308, 2002 WL 467939 at *2 (6th Cir. Mar. 26, 2002).

State of Ohio.[38] Generally, states are absolutely immune from suits for damages under the Eleventh Amendment; however, Congress may abrogate or revoke that immunity when exercising its enforcement authority under the Fourteenth Amendment.[39] Congress expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA,[40] but the Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim.[41] To determine whether the Eleventh Amendment bars an ADA Title II claim against a state, the Supreme Court has set forth a three-part test. On a claim-by-claim basis, the Supreme Court instructs lower Courts to determine: "(1) which aspects of the state's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.[42]

---

[38] *Will*, 491 U.S. at 71.

[39] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000).

[40] 42 U.S.C. § 12202 ("A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").

[41] *See Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 374 (2001)(Title I claim barred where there was no pattern of discrimination by the states and the remedy imposed by Congress was not congruent and proportional to the targeted violation); *Tennessee v. Lane*, 541 U.S. 509, 533–34, (2004) (Title II claim alleging denial of "the fundamental right of access to the courts" not barred); *United States v. Georgia*, 546 U.S. 151, 159 (2006) (Title II claim not barred to the extent that the ADA-violating conduct also violates the Fourteenth Amendment). *See also Mingus v. Butler*, 591 F.3d 474, 483 (6th Cir. 2010) (distinguishing between equal protection claims based on heightened scrutiny as a member of a suspect class and challenges under rational basis review for purposes of sovereign immunity).

[42] *Georgia*, 546 U.S. at 159.

The first step is to determine whether the State's alleged conduct violated Title II. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[43] Plaintiff fails to name a public service, program, or activity from which he was excluded or denied benefits. He contends that it is more difficult for him to open doors to the law library. There is a distinction between access to a specific facility and access to a public service, program, or activity under Title II's private cause of action.[44] Design features such as doors that must be opened manually are not services, programs, or activities for purposes of Title II.[45] Plaintiff also alleges it is difficult for him to be first in line to purchase copy cards, or use computers or copiers, or first to return to his cell after cell block searches before other inmates can steal his property. These allegations do not support a denial of access to public services or programs. Plaintiff has not identified conduct that violates Title II for purposes of overcoming Eleventh Amendment sovereign immunity.

**Due Process**

Plaintiff asserts both procedural and substantive due process claims pertaining to the removal of legal materials and copying cards during searches of his cell.[46] The Due Process Clause has a procedural component and a substantive one. A procedural due process claim, unlike its substantive counterpart, does not require that the government refrain from making a

---

[43] 42 U.S.C. § 12132.

[44] *Babcock v. Michigan*, 812 F.3d 531, 535-36 (6th Cir. 2016).

[45] *Id.*

[46] Counts 3, 5, and 6

-10-

choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision to minimize the risk of erroneous deprivation.[47] Substantive due process, on the other hand, serves as a check on official misconduct which infringes on a fundamental right or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscience," as to rise to the level of a constitutional violation.[48]

To prevail on a procedural due process claim, Plaintiff must plead and prove either that the Defendants deprived him of his property as a result of an established state procedure that itself violates due process rights; or that the Defendants deprived him of property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation.[49] Plaintiff alleges his papers and copy cards were taken as a result of a random and unauthorized acts. He must therefore also plead that his state remedies to redress this problem are inadequate. A remedy is available in the Ohio Court of Claims for property that was taken by corrections officers.[50] He does not allege this remedy is inadequate.

Furthermore, Plaintiff failed to state a claim for denial of substantive due process. The conduct in question did not infringe on a fundament right not listed in the Bill of Rights. While Plaintiff may find that the conduct was annoying and frustrating, it was not so excessive or egregious as to shock the conscience.

---

[47] *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996).

[48] *Howard*, 82 F.3d at 1349.

[49] *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).

[50] *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989).

-11-

**Eighth Amendment**

Plaintiff includes four types of Eighth Amendment claims. First, he contends he was subjected to cruel and unusual punishment when Defendants failed to intervene to make sure other inmates gave him access to law library materials and services.[51] Second, he claims Defendants who confiscated his legal materials and copy cards violated his Eighth Amendment rights.[52] Third, he claims the Warden subjected him to cruel and unusual punishment by denying his request for release and transportation to Florida for a hearing in a civil case.[53] Finally, he asserts claims of deliberate indifference to serious medical needs against Dr. Granson and Pharmacy Nurse Megan.[54]

To state a claim for violation of the Eighth Amendment, Plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.[55] Routine discomforts of prison life do not rise to the level of a constitutional violation.[56] In addition, Plaintiff must show the prison officials acted with a sufficiently culpable state of mind.[57] Deliberate indifference "entails something more than mere negligence."[58] An inmate must show

---

[51] Counts 1 and 2.

[52] Counts 3, 5, and 6.

[53] Count 7

[54] Counts 8, 9, 10

[55] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

[56] *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

[57] *Id.*

[58] *Farmer*, 511 U.S. at 835.

-12-

that the Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety.[59] The Defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference.[60]

The conditions of confinement Plaintiff alleges do not meet the objective criteria to state an Eighth Amendment claim. Having limited library resources is a routine discomfort of prison life. It does not threaten Plaintiff's health or safety. Similarly, taking copy cards and legal material, and denying travel to defend a civil lawsuit in person are discomforts and inconveniences that come with prison confinement. They also do not threaten Plaintiff's health or safety.

To state an Eighth Amendment claim against Granson and Nurse Megan for denial of proper medical care, Plaintiff must show that he was suffering from a "serious" medical need. The duty to provide a certain level of health care to incarcerated offenders under the Eighth Amendment is a limited one. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'"[61] Furthermore, he must show that the Defendants were deliberately indifferent to his serious medical needs. Prisoners are not entitled to unfettered access to the medical treatment of their choice.[62] Allegations of medical malpractice, negligent diagnosis, or negligent treatment fail to state an Eighth

---

[59] *Id*.

[60] *Id*. at 837.

[61] *Sarah v. Thompson*, No. 03-2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

[62] S*ee Hudson*, 503 U.S. at 9.

-13-

Amendment claim.[63] Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.[64] To demonstrate that the Defendants' treatment rose beyond the level of state tort law to a constitutional violation, Plaintiff must allege facts to suggest his medical treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."[65]

Plaintiff's claim against Granson concerns his allegation that his right leg is shorter than his left leg and continually shrinking. Plaintiff claims Granson has not shared a diagnosis with him. He acknowledges he is being treated by Granson, but claims he should be treated by a specialist outside of the institution. He also contends he should be given orthopedic shoes. He states he has a cane to assist with walking. Plaintiff does not provide much information regarding his condition for the Court to be able to discern whether it is objectively serious. Even assuming it is a serious medical condition, Plaintiff appears to dispute the doctor's course of treatment. Differences of opinion do not rise to the level of an Eighth Amendment violation.

Plaintiff's claim against Nurse Megan concerns her alleged refusal to give him mouthwash after he had a tooth extracted. Dental needs have been recognized as falling into the category of "serious medical needs if they are diagnosed by a dentist as one that "mandat[es] treatment or one that is so obvious that even a lay person would easily recognize the necessity

---

[63] *Farmer*, 511 U.S. at 835-36.

[64] *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5. (6th Cir. 1976).

[65] *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002)

-14-

for a doctor's attention."[66] Nevertheless, not all dental problems constitute serious medical needs. Rather, "[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the Plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities."[67] Plaintiff was prescribed mouthwash after a tooth extraction to keep the area clean and to prevent infection. Although he contends he experienced pain after the extraction, there is no indication that mouthwash would have prevented that pain or that he developed an infection that could have been prevented with mouthwash. He does not allege sufficient facts to suggest that the denial of mouthwash rose to the level of an Eighth Amendment violation.

**Retaliation**

While many of Plaintiff's Counts include retaliation claims, all but two of them are stated solely as legal conclusions and do not meet basic pleading requirements.[68] One of the remaining retaliation claims is asserted against Carpenter for confiscating his 20 photocopying cards.[69] The other retaliation claim is asserted against Nurse Megan for allegedly telling Plaintiff that if he continued to complain, he would not get any of his medications.

To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: (1) he engaged in protected conduct; (2) an adverse action was taken against him

---

[66] *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010); *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

[67] *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998).

[68] *Iqbal*, 556 U.S. at 678.

[69] Count 6

-15-

that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that a causal connection exists between the first two elements.[70]

Plaintiff claims Carpenter searched his cell, confiscated his copy cards and issued a conduct report for possessing contraband. His unit sergeant withdrew the conduct report and ordered Carpenter to return the cards to Plaintiff. In this case, Plaintiff does not specify what his protected conduct is. He indicates Carpenter was somehow aware that he was a high volume filer. This status alone does not qualify as protected conduct.[71] In addition, he fails to allege an adverse action that would deter a person of ordinary firmness from being a high volume filer. His conduct report was withdrawn and his cards were returned to him.

Similarly, Plaintiff alleges he went to the prison pharmacy to obtain mouthwash. He contends he and Nurse Megan argued about whether he should receive the mouthwash. The discussion grew loud enough to draw the attention of personnel in the nearby dental office. They told him they would address the problem. He claims when he returned to the office, Nurse Megan handed him his other medications, but not the mouthwash, and stated that if he continued to complain, he would not get any of his medications. Again, Plaintiff does not identify the protected conduct in which he engaged. Arguing with prison personnel is not a protected activity under the First Amendment which can give rise to a retaliation claim.[72] Plaintiff also fails to allege sufficient facts to suggest that her response to him, after giving him

---

[70] *Thaddeus-X*, 175 F.3d at 394.

[71] *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)(filing frivolous cases is not protected conduct).

[72] *See, e.g., Goddard v. Kentucky Department of Corrections*, Nos. 99-5348 and 99-5971, 2000 WL 191758 at *2 (6th Cir. Feb.7, 2000) ("[plaintiff prisoner's] cursing to correctional officials and complaining about his treatment he received ... is not an activity that may be protected under the First Amendment").

his other medications, was sufficiently severe to constitute an adverse action capable of deterring a person of ordinary firmness from continuing to argue with the pharmacy nurse.

**<u>Fourth Amendment</u>**

Plaintiff asserts three claims for relief under the Fourth Amendment based on searches of his cell, resulting in the taking of copy cards, legal research and paperwork. In Count 3, he alleges Mosier and Collins packed up his cell after he was sent to segregation on November 25, 2014. His legal materials could not be located until January 16, 2017. At that time, most of his materials were found and returned to him. In Count 5, he contends John Doe officers conducted a search of his cell block while the inmates were kept in the gym. When the inmates were permitted to return to their cells, Plaintiff discovered some of his copy cards were missing. He alleges either John Doe officers or other inmates took them. In Count 6, he alleges his cell was searched by Carpenter and his copy cards were confiscated as contraband. They were returned to him by the unit sergeant.

To the extent Plaintiff contests the packing of his cell in November 2014, his claims are time-barred. The statute of limitations for claims asserted under 42 U.S.C. § 1983 is two years.[73]

In addition, all of his causes of action under the Fourth Amendment, including the one pertaining to the November 2014 search, fail to state a claim. The Fourth Amendment's protections hinge on the occurrence of a "search."[74] A search is defined in terms of a person's

---

[73] *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995).

[74] *See Kyllo v. United States*, 533 U.S. 27, 32 (2001)(discussing "when a search is not a search").

-17-

"reasonable expectation of privacy."[75] For the Fourth Amendment protections to apply, the individual must have a subjective expectation of privacy in the area, and society must be willing to recognize that expectation as reasonable.[76] In this case, society does not acknowledge a prisoner's expectation of privacy in his prison cell as being reasonable.[77] The examination of the contents of Plaintiff's cell for purposes of packing his belongings when he is moved to segregation or for searching for contraband is not a "search" protected by the Fourth Amendment.

**Federal Civil Procedure Rule 8**

Plaintiff also includes claims for violation of his Sixth Amendment rights,[78] and his rights under the First Amendment to Freedom of Expression.[79] He does not explain these claims nor does he allege any facts to suggest a plausible cause of action under either of these Amendments. To satisfy basic pleading requirements of Federal Civil Procedure Rule 8, Plaintiff must give the Defendants fair notice of what his claims are and the grounds upon which they rest.[80] These claims do not satisfy the basic pleading requirements.

Similarly, Counts 11 and 12 of Plaintiff's Complaint are "catch-all" provisions asserted against all Defendants for everything stated in the Counts 1 through 10. He does not include any specific allegations in these Counts. To the extent they have not already been addressed

---

[75] *Widgren v. Maple Grove Tp.,* 429 F.3d 575, 578 (6th Cir. 2005).

[76] *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

[77] *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

[78] Counts 2, 5, and 6.

[79] Count 2

[80] *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008).

above, they also fail to satisfy the basic pleading requirements of Federal Civil Procedure Rule 8.

**State Law Claims**

Finally, in each Count, Plaintiff asserts multiple clams arising under state tort law. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.[81] The Court, however, may exercise discretion in hearing state law matters.[82] In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.[83] Having dismissed plaintiff's federal law claims, this Court declines jurisdiction to hear Plaintiff's state law claims.

### III. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Dated: June 13, 2017            *s/     James S. Gwin*
                                JAMES S. GWIN
                                UNITED STATES DISTRICT JUDGE

---

[81] *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).

[82] *Id.* at 726.

[83] *Id.*