UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

JOHN CODY, aka : CASE NO. 1:17-CV-00132
BOBBY THOMPSON, :
 :
      Plaintiff, :
 :
vs. : OPINION & ORDER
 : [Resolving Doc. No. 14]
KAREN SLUSHER, *et al.*, :
 :
      Defendants. :
 :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Plaintiff moves to amend his Complaint.[1] This case was originally filed in January 2017 with a 479-page Complaint against fifteen Defendants. That Complaint was divided into twelve counts, describing multiple incidents and including multiple causes of action, including denial of access to courts, retaliation, denial of due process, denial of equal protection, unlawful search and seizure of property, subjection to cruel and unusual punishment, violations of the ADA, and numerous state law claims.

    On June 13, 2017, this Court dismissed all claims under 28 U.S.C. § 1915(e). Plaintiff appealed that decision. The United States Sixth Circuit Court of Appeals affirmed the Court's decision on all claims except the following retaliation claims:

---

[1] Doc. No. 14.

1. Nurse Megan's alleged refusal to provide him with prescribed mouthwash and threats to withhold future medication in retaliation for filing grievances and lawsuits.

2. ADA Assistant Coordinator Jordan's alleged threat to withhold medical care if he continued to file grievances against her.

3. Warden Bradshaw's alleged order for subordinates to close the law library in retaliation for filing grievances and lawsuits.

4. Corrections Officer Slusher's alleged order for him to the leave the library prematurely in retaliation for filing grievances and lawsuits.

5. Deputy Warden Milligan's alleged imposition of limitations on Plaintiff's ability to make photocopies for court in retaliation for filing grievances and lawsuits.

6. Institutional Inspector Rose's alleged ignoring of grievances in retaliation for filing grievances and lawsuits.

7. Lieutenant Spears alleged ordering of unidentified individuals to confiscate his legal materials and copy cards during a search of the dormitory in retaliation for filing grievances and lawsuits.

8. Corrections Officers France and Carpenter's alleged confiscation of copy cards to delete balances in retaliation for filing grievances and lawsuits.

The Circuit reversed the dismissal of those claims and remanded the case for this Court to consider those claims. In addition, this Court also dismissed Plaintiff's state law claims because they were before the Court on supplemental jurisdiction. As the specified retaliation claims were remanded, supplemental jurisdiction is now possible, and the Circuit vacated that dismissal to allow the merits consideration of those state law claims.

**1. Motion to Amend Complaint**

Plaintiff has now filed a Motion to Amend his Complaint and attached his proposed 373-page Amended Complaint. This lengthy pleading is rambling, disjointed and difficult to decipher. After in-depth scrutiny of the proposed pleading, it appears he is seeking to

recharacterize as retaliation claims all of the claims which dismissed by this Court and affirmed by the Sixth Circuit in an attempt to litigate them under a new legal theory.

Generally, *pro se* pleadings are given a liberal construction and not held to the standards expected of attorneys. Plaintiff, however, contends he is a Harvard Law School graduate and a former criminal practice attorney. The Sixth Circuit instructed that because Plaintiff was an attorney, he is not entitled to liberal construction of his pleadings and motions.

The Court denies the Motion to Amend his Complaint. Plaintiff is barred by the doctrine of *res judicata* from relitigating claims that were already considered on the merits and affirmed, either under the legal theories presented in his original Complaint or under new legal theories to avoid the finality of the previous judgment. The only claims which are still before the Court after the appeal are those specific retaliation claims listed above, and the state law claims identified in the original Complaint.

## II. Screening of State Law Claims

As mentioned above, the Court did not screen the state law claims under 28 U.S.C. § 1915(e) in its original Memorandum of Opinion because it declined supplemental jurisdiction when the federal law claims were dismissed. The Court must now screen the state law claims and dismiss any claim that lacks an arguable basis in law or fact or fails to state a claim upon which relief can be granted.[2]

---

[2] *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

3

**Breach of Contract**

Plaintiff asserts a claim for breach of contract in Count I of his Complaint. He contends Slusher closed the law library for other inmate programming when it should have been kept open for research. He contends Milligan limited the number of copy machines available for inmates and limited the number of copies inmates could make at one time to 800. He also states Milligan allowed his prison account to be garnished for other costs, leaving less money in his account to make copies. None of these allegations suggest the Defendants entered into a contract, express or implied, with Plaintiff.

**Intentional Infliction of Emotional Distress**

Plaintiff asserts claims for intentional infliction of emotional distress in Counts I through XI. In order to establish a claim for intentional infliction of emotional distress, Plaintiff must prove "(1) that the Defendant intended to cause the Plaintiff serious emotional distress, (2) that the Defendant's conduct was extreme and outrageous, and (3) that the Defendant's conduct was the proximate cause of Plaintiff's serious emotional distress."[3]

The issue of whether conduct "rises to the level of 'extreme and outrageous' conduct constitutes a question of law."[4] In order to recover for a claim of intentional infliction of emotional distress under Ohio law, "it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the Plaintiff to punitive damages for another tort."[5] Instead, the Defendant's conduct must be

---

[3] *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410 (1994).
[4] *Meminger v. Ohio State Univ.*, 102 N.E.3d 642, 642–48 (Ohio Ct. App. 2017)
[5] *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App. 3d 46, 47 (Ohio Ct. App. 8th Dist. 2007).

4

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[6]

The conduct that Plaintiff complains about – closing or preventing access to the law library, limiting the number of photocopies, confiscating copy cards, taking folders with legal materials, denying grievances on procedural ground or on the merits, refusing to give prescription mouthwash, and engaging in an unspecified campaign of harassment – do not suggest conduct that is regarded as atrocious and utterly intolerable in a civilized society.

**Negligent Infliction of Emotional Distress**

Plaintiff also includes claims for Negligent Infliction of Emotional Distress. In Ohio, recovery for negligent infliction of emotion distress is limited to situations in which the Plaintiff was a bystander to an accident or was in fear of actual and personal physical peril.[7] Moreover, the Plaintiff must also have suffered "serious emotional distress," which "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."[8] Again, the conduct of which Plaintiff complains, listed above, provides no suggestion that Plaintiff was in actual fear of physical peril or that any of those situations would render a reasonable person unable to cope adequately with the mental distress resulting from that situation.

---

[6] *Id*.
[7] *Audia v. Rossi Bros*. Funeral Home, 140 Ohio App. 3d 589, 590–95 (2000).
[8] *Thomas v. United States*, No. 1:14 CV 2184, 2016 WL 6902357, at *4–9 (N.D. Ohio Sept. 26, 2016)(citing *Paugh v. Hanks*, 451 N.E.2d 759 (Ohio 1983)), rev'd on other grounds, *Gallimore v. Children's Hosp. Med. Ctr.*, 617 N.E.2d 1052 (Ohio 1993).

**Negligence**

Plaintiff asserts general negligence claims in Counts I, III, V, VI, VII, VIII, X, and XI. Although Plaintiff includes a negligence claim in Counts II and XI, he does not allege facts to suggest that the named Defendants engaged in behavior which could be construed to be negligent.

To recover on a claim for negligence, Plaintiff must prove the existence of a duty, a breach of that duty, and an injury proximately caused by the breach.[9] In the context of a custodial relationship between the state and its prisoners, the state owes a common law duty of reasonable care and protection from unreasonable risks. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know."[10] A prison therefore must exercise the degree of caution and foresight that an ordinarily reasonable and prudent person would use under the same or similar circumstances.[11] A prison, however, is not an insurer of the safety of its inmates.[12] "The inmate also bears a responsibility 'to use reasonable care to ensure his own safety.' "[13]

Plaintiff contends the following behavior was negligent:

1. Slusher closed the library, sometimes for other inmate programming when it should have been open for him.

---

[9] *Lloyd v. Ohio Dep't of Rehab. & Correction*, 91 N.E.3d 134, 137-38 (Ohio Ct. App. 2017).
[10] *Id.*
[11] *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).
[12] *Id.*
[13] *Id.*

6

2. Slusher did not prevent other younger, stronger inmates from getting in line first for copies, or computer time.

3. Milligan limited the number of copies and the number of copy cards an inmate could carry or purchase at one time.

4. Milligan allowed funds to be garnished from his prisoner account for other purposes which limited funds available for purchasing copies.

5. Eslick and Allenbaugh took his legal materials, envelope and reference book.

6. Doe seized copy cards and over-the-counter medication.

7. Rose did not favorably rule on his grievances.

8. France and Carpenter seized copy cards and depleted them.

9. Bradshaw would not facilitate or finance a trip to Florida to defend an action to seize property in payment of a judgment.

10. Jordan told him he could not have the painkillers he requested for a chronic leg injury because the medication was not on the approved list. Jordan did not think it necessary to refer him to the doctor. Jordan told him his health request forms were too long and not specific enough.

11. Granson did not examine him but questioned his use of a cane. He approved the cane, but told Plaintiff he would be required to demonstrate annually that he still needed the cane. Grandson denied his request for orthopedic shoes.

These negligence claims meet the basic pleading requirements to survive initial screening under 28 U.S.C. § 1915(e).

**Replevin and Conversion**

Plaintiff lists causes of action for replevin and conversion in Counts II, III, V, VI, VIII, and X. A replevin action is filed by a Plaintiff who is entitled to possession of certain property against the person or entity that has possession and control of it at the time the lawsuit is filed.[14]

---

[14] *Tewarson v. Simon*, 141 Ohio App.3d 103, 117 (2001).

It is based on an unlawful detention, regardless of whether an unlawful taking has occurred.[15] In a replevin action, the judgment awards possession of the property. If delivery of the property cannot be made, the action may proceed as a claim for conversion. Although listed as a cause of action in Counts II, VIII, and X, none of these counts contain allegations pertaining to taking of property. Those claims are dismissed. He contends in Count III that Eslick and Allenbaugh took legal materials. In Count V, he alleges Doe seized copy cards and over-the-counter medication. In Count VI, Plaintiff alleges France and Carpenter took copy cards and depleted copies from the cards they returned. These claims meet the minimal pleading requirements needed to survive initial review under 28 U.S.C. § 1915(e).

**Ohio Revised Code § 2923.32 (Ohio's version of RICO)**

Finally, Plaintiff includes general allegations that the Defendants violated Ohio's version of the Racketeer Influenced Corrupt Organization Act ("RICO"). In order to allege a state RICO violation, the following elements must be pled with specificity: (1) that conduct of the Defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the Defendant constitutes a pattern of corrupt activity, and (3) that the Defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.[16] Plaintiff first fails to allege facts suggest any of the Defendants engaged in two or more specific state or federal offenses. Moreover, he fails to allege they participated in the affairs of an enterprise. Plaintiff contends each Defendant is his or her own enterprise.

---

[15] *Id*
[16] *Kondrat v. Morris*, 118 Ohio App. 3d 198, 209 (1997)(citing *Universal Coach, Inc. v. New York City Transit Auth., Inc*., 90 Ohio App.3d 284, 291(1993)).

Under Ohio's RICO statute, an " '[e]nterprise' includes any individual, * * * corporation, * * * or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises."[17] Because "persons," not "enterprises," are liable under the statute, the person and the enterprise must be separate entities.[18] Furthermore, although a corporation or entity may be a member of an enterprise, the enterprise may not simply be composed of a corporation and its officers or employees.[19] "In short, an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself."[20] Plaintiff has not pled facts sufficient to suggest the existence on an enterprise separate and apart from the individual or the prison for which they all work.

## IV. Conclusion

Accordingly, Plaintiff's Motion to Amend Complaint[21] is denied. Plaintiff's state law claims for breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, Ohio RICO (Ohio Rev. Code § 2923.32) are dismissed under 28 U.S.C. §1915(e). His replevin and conversion claims in counts II, VIII, and X, and his negligence claims in counts II and XI are also dismissed under §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[22]

---

[17] Ohio Rev. Code § 2923.31(C).
[18] *United States Demolition & Contracting, Inc. v. O'Rourke Constr. Co*., 94 Ohio App.3d 75, 85 (1994)(citing *Universal Coach*, 90 Ohio App.3d at 291).
[19] *Flanagan v. Eden*, No. 85252, 2005 WL 1484038, at *3 (Ohio Ct. App. June 23, 2005)(citing *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 583(5th Cir. 1992); *Bd. of Cty. Commrs. v. Liberty Group*, 965 F.2d 879, 885(10th Cir. 1992)).
[20] *Id.*
[21] Doc. No. 14.
[22] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

This case shall proceed solely on the retaliation claims identified by the Sixth Circuit Court of Appeals and listed in this Order, and the replevin/conversion claims asserted against Eslick, Allenbaugh, Doe, France and Carpenter, and negligence claims asserted against Slusher, Milligan, Eslick, Allenbaugh, Doe, Rose, France, Carpenter, Bradshaw, Jordan and Granson.

While the Court is in possession of the Marshal Forms and Summonses for service on the remaining Defendants, Plaintiff did not provide copies of the Complaint and all of its attachments for each of the Defendants. Consequently, the Court is unable to forward documents to the United States Marshals for service on the remaining Defendants. Plaintiff is therefore ordered to provide to the Court a copy of the original Complaint and all of its attachments for Defendants Slusher, Bradshaw, Milligan, Rose, Spears, France, Carpenter, Eslick, Allenbaugh, Doe, Granson, Nurse Megan and Jordan within thirty days of the date of this Order. Plaintiff is further ordered to send a "Notice of Compliance," with an appropriate case caption for filing, with the copies of the Complaint and attachments.

IT IS SO ORDERED.

Dated: January 30, 2019　　　　　　　　　　*s/　　James S. Gwin*
　　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE